B. C. BAY ET AL., Appellees, v. J. S. DAVIDSON ET AL., Appellees, WOOD BINNING, Appellant.

Municipal corporations: CONTRACTS WITH OFFICIALS: STATUTES. A contract for the sale of merchandise to a town by a member of the council is void, both by the law of agency and on the ground of public policy, even though the town may have received the benefits; and the common law rule is not affected by the enactment of Code, section 668, relating to the interest of a councilman in any contract or job of work for the town.

*Appeal from Decatur District Court.*— Hon. H. M.
Towner, Judge.

WEDNESDAY, MARCH 13, 1907.

ACTION in equity for an injunction.   The opinion states
the case.   From a decree in favor of the plaintiffs, the de-
fendant Wood Binning appeals.— *Affirmed.*

*C. W. Hoffman* and *M. L. Temple,* for appellants.

*V. R. McGinniss* and *Marion Woodard,* for appellees.

BISHOP, J.— The plaintiffs are residents and taxpayers
of the town of Grand River, in Decatur county.   The de-
fendants are, respectively, the mayor and members of the
town council of said town, among whom is defendant Wood
Binning, who alone appeared and answered.   It is alleged in
the petition that said defendant Binning is a merchant in
said town, and that during the year 1903 he sold and deliv-
ered to and for the use of the town certain lumber, paints and
oil, and machinery, which were used by the town in con-
structing and repairing sidewalks, mowing weeds, etc.   The
prayer is for an injunction restraining payment therefor.
The answer admits the sale of the merchandise, and alleges
that the sale was upon open market, in good faith, and for
the reasonable value; that at the time there were but two
merchants in and proximate to the town from whom such
merchandise could be purchased, viz., the answering defend-
ant, and one Griffin; the latter also a member of the town
council.   In addition, said defendant alleges that the fact of
his furnishing lumber, etc., for sidewalks, crossings, etc.,
was well known to plaintiffs and the other residents and tax-
payers of said town, and that no objection was ever made
thereto; that accordingly plaintiffs are estopped.   The answer
was met by a general demurrer, and, upon being submitted,
the demurrer was sustained.   Defendant electing to stand on

his answer and the ruling on the demurrer, decree was entered as prayed in the petition.

In our opinion the ruling upon the demurrer was correct and the decree entered should be sustained. Plaintiff's principal reliance was upon the provisions of Code, section 668, subdivision 14, which provides that no members of any council shall be interested, directly or indirectly, in any contract or job for work, or the profits thereof, or services to be performed for the corporation. And it is the argument in this court, as it was in the court below, that the statutory prohibition by fair intendment includes sales of merchandise to the town by a member of council. The trial court declined to adopt this view, but held that such contracts of sale must be held void in virtue of the common law. We agree that such contracts are not within the statute. The prohibition has relation to " contracts or jobs for work." It is plain that the expression " contract or job " is to be construed in the conjunctive. What was intended was to forbid in connection with municipal work the employment by the council of one of its own members. And this is rendered more probable when we consider that, as held by the court below, contracts such as are here in question are not only prohibited by statute, but by general law. The compensation to be paid a councilman is fixed by Code, section 669, and it is exclusive of any other. It cannot be increased either by direct payment, or indirectly through the medium of profits on sales of goods. As pertinently said in *Council Bluffs v. Waterman,* 86 Iowa, 688, if an officer feels that he is not properly compensated for the services required of him, there is no law to prevent him from resigning. The following cases are also in point: *Fawcett v. County,* 55 Iowa, 154, *Moore v. District,* 55 Iowa, 654, *Moore v. County,* 61 Iowa, 177, *Adams County v. Hunter,* 78 Iowa, 328, *Massie v. County,* 129 Iowa, 277.

Now, by general law contracts of sale as here shown cannot be upheld because they are not only violative of the

fundamental law of agency, but are contrary to public policy. The defendant Binning was an officer and agent of the town, and the duty and obligation which the law cast upon him in such relation forbade him from acting in any transaction for himself as an individual on the one part, and as an officer and agent of the town on the other part. And it can make no difference that in the particular transaction he refrained from voting for the purchase of goods as made. It was his duty to vote, and he could not reap an advantage by avoiding that duty. As said by Judge Dillon in his work on Municipal Corporations, section 444:

It is a well-established and salutary rule in equity that he who is intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend upon reason technical in character, and is not local in its application. It is based upon principles of reason, of morality and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well- regulated system of jurisprudence prevails. One who has power, owing to the frailty of human nature will be too readily seized with the inclination to use the opportunity for securing his own interest at the expense of that for which he is intrusted. . . . The law will in no case permit persons who have undertaken a character or a charge to change or invert that character by leaving it and acting for themselves in a business in which their character binds them to act for others.

See, also, *People v. Board,* 11 Mich. 222; *City of Ft. Wayne v. Rosenthal,* 75 Ind. 156 (39 Am. Rep. 127); *Gas Co. v. West,* 28 Neb. 852 (45 N. W. 242); *Smith v. City,* 61 N. Y. 444.

In the case last cited it appeared that a committee of the city of Albany, having in charge a celebration, had hired carriages of Smith, a member of the council, and he sought to recover compensation from the city therefor. In refusing

to recognize his claim the court said: " The council of the city were the agents of the city, and, while holding their relation to it, each member of that body was under such an obligation of absolute loyalty to the interests of the city, as prohibited him from entering into any arrangement with his associates by which his individual interests could come in conflict with the interests of his constituents, who are entitled exclusively to such an exercise of his caution and judgment in their behalf as an ordinarily prudent man would exercise in his own business." We cannot better conclude our own thought on the subject than by quoting from an opinion handed down by the learned trial judge at the time of entering the decree here appealed from. After referring to the principle of the agency, he said:

Applying that principle to the case at bar, and the sales of merchandise by Wood Binning as an individual to Wood Binning as the agent of the town of Grand River for the use of the town, must be held invalid. Wood Binning has accepted the duty and obligation of an agent or trustee for the town of Grand River. As such agent, he owed his principal the utmost good faith in the performance of his duties. As such agent, it was his duty to purchase material for the town of as good quality and for as low a price as it was possible to procure. But if he himself became the seller, it was his interest to sell such articles as he had notwithstanding their quality and for the highest price he could obtain. His duty to the town and his private interests thus became directly antagonistic. It matters not if he did in fact make his private interests subservient to his public duties. It is the relation that the law condemns, not the results. It might be that in this individual case public duty triumphed in the struggle with private interests, but such might not be the case again or with another officer, and the law will not increase the temptation nor multiply opportunities for malfeasance. Neither will it take the trouble to determine whether in any case the result shows a wrong or crime, but it absolutely and unequivocally refuses its sanction to any contract of any kind whatever where such relation exists.

That contracts such as are here complained of are against public policy is plainly manifest. The courts of the country, including this court, have repeatedly made pronouncement to that effect. And it is fundamental doctrine that a contract which is violative of public policy is void and will not be enforced. *Guenther v. Dewien,* 11 Iowa, 133; *Merrill v. Packer,* 80 Iowa, 543; Greenhold on Public Policy, 335. Thus, in *Weitz v. Independent District,* 78 Iowa, 37, it appeared that the board of the defendant district had employed one of its own members to superintend the construction of a schoolhouse, and we held that the contract was void. The opinion there was put squarely upon the doctrine that it would be most unwise and against public policy to permit a board of directors to contract with one of its members in the name of the district. And it was said that such an agreement would in fact be between a portion of the members of the board on the one side, and a director as contractor on the other, and the contract might be determined by his own voice. Such a practice would give opportunity for the grossest fraud. Secret understandings might be entered into between a majority of the members of the board by virtue of which different contracts might be parceled among them to the prejudice of the district. See, also, *Langan v. Sankey,* 55 Iowa, 52; *Gleason v. Railway,* (Iowa), 43 N. W. 517; *Macy v. Duluth,* 68 Minn. 452 (71 N. W. 687); *Brown v. Bank,* 137 Ind. 655 (37 N. E. 158, 24 L. R. A. 211); *Burka v. Woodward,* 125 Cal. 119 (57 Pac. 777, 45 L. R. A. 420, 73 Am. St. R. 31).

That the town has received the benefits of the contract is not material. This court is committed to the doctrine that the contract being invalid it cannot be rendered valid so as to support an action for recovery by invoking the doctrine of estoppel. See the cases above cited. Such is also the rule in most other jurisdictions. 15 Am. & Eng. Ency. p. 999, and cases cited in notes. But counsel for appellant say that the common-law rule as to such contracts is no longer

in force in this State, and this in virtue of the statute forbidding contracts, etc., for work. It is the argument on this point that as the law-making power has seen fit to legislate upon the subject, and by specific enactment put restraint only upon such contracts as have in view the performance of service or work, this must be accepted as accomplishing an abrogation of the common-law rule, as related to all other contracts, between a municipality and one of its officers. This position is wholly untenable. It would seem that counsel have in mind the maxim " *expressio unius est exclusio alterius* " (the naming of one person or thing is an exclusion of the other). Reflection will make it clear that the maxim cannot be given application to work a result as here contended for. We have already said in this opinion that contracts of the character here in question are not included in the statute, and this, because the statute refers only to contracts for service or labor. And, in so holding, we have in a sense made application of the maxim above quoted. And, as we have seen, the decree was not predicated upon the statute, and there is no authority, as there can be no reason, for invoking the maxim to give validity to a contract void at common law as against public policy simply because it does not fall within the provisions of the statute. Both contracts for service and contracts of sale are prohibited at common law. The Legislature has done nothing more than to emphasize the prohibition as to service contracts. And, in our opinion, it would be absurd to give effect to the statute as evidencing at once a change of view respecting the matter of public policy, and as a declaration for the legality of all contracts theretofore within the class prohibited at common law save those in such statute prohibited in terms.

The decree was right and it is *affirmed.*