## CITY OF MINNEAPOLIS v. JAMES R. CANTERBURY.[1]

July 3, 1913.

Nos. 18,036—(144).

**Recovery of profits from fire chief — evidence.**

    1. Evidence in an action by a city against one of its officers to recover the profits alleged to have been realized by him upon a sale of land to the city, considered, and *held* to show, as a matter of law, that defendant purchased the property pursuant to a plan to sell it to the city, and that an alleged sale thereof by him to the city's vendor was designed to enable him to carry out his plan.

**Disability of public officers to deal with principal.**

    2. Public, including municipal, office or agency, entails a natural disability on the part of the officer, reinforced by gravest considerations of public policy, to contract or deal personally, either directly or indirectly, with his principal, concerning matters within his province as such officer or agent, without regard either to the fairness or unfairness of the transaction, or to whether the principal is or is not benefited thereby.

[1] Reported in 142 N. W. 812.

---

Note. — Upon the power of an officer to contract with public body or municipality which he represents, see note in 15 L.R.A. 520.

**Same.**

3. This rule exists independently of statute, and its force is not lessened nor its scope restricted by statutory or ordinance declarations thereof.

**Ratification — profits.**

4. The proscribed transaction cannot be ratified except by the most unqualified acceptance by the duly constituted authorities, with full knowledge, and then only to the extent of rendering the principal liable, as upon implied contract, for the reasonable value of the services or property received by it, which does not include profits made by the officer.

**Officer held to be trustee.**

5. Where a city officer, while acting in an advisory capacity to a committee of the council charged with the selection of a site for a building to be used in connection with his department, purchased certain land with the view of selling it to the city for such purpose, and conveyed it to a third person who, pursuant to the plan, sold it to the city at an advanced price, the officer became a trustee for, and liable to the city to the extent of, the difference between the price paid by him and that paid by the city.

**Comment of trial judge upon witnesses.**

6. Assignments of error upon measures adopted by the trial court to prevent interruption of counsel in the examination of witnesses, are entitled to slight consideration if it appears that the court's action was prompted by the misconduct of complaining counsel in this regard.

**Same.**

7. While the trial court has a wide discretion in the conduct of the trial, it must not invade the province of the jury by making comments, insinuations, or suggestions indicative of belief or unbelief in the integrity or credibility of witnesses.

Action in the district court for Hennepin county to recover $3,000. The facts are stated in the opinion. The answer denied that defendant was personally interested in the sale of property of Sarah A. Guile to plaintiff city or that defendant profited by such sale in any manner whatsoever; alleged that he had no personal interest whatsoever in the purchase of the property from said Guile by plaintiff, and that he profited in no manner whatsoever thereby, and that the purchase price paid by the city was for her sole benefit. The answer further alleged that, at the time defendant purchased the property, he entered into the contract without any intention or purpose of offering the property to plaintiff or of attempting to have it

acquire the same; that at the time of the purchase by the city it was of the reasonable market value of at least $9,000, and denied that on account of any of defendant's acts had the plaintiff been damaged or lost any sum whatsoever. The case was tried before Dickinson, J., and a jury which returned a verdict of $3,500 in favor of plaintiff. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*Albert H. Hall,* for appellant.

*Daniel Fish,* City Attorney, and *Henry C. Flannery,* Assistant City Attorney, for respondent.

PHILIP E. BROWN, J.

Appeal by defendant from an order denying his motion for a new trial after verdict against him for $3,500.

Prior to January, 1909, and later, the council of the city were concerned in acquiring a site for a fire department repair shop. Its selection was entrusted to a committee of five aldermen. Defendant, who had been chief of the department since 1898, sat with the committee and accompanied the members when they were investigating the desirability of sites, which occurred on several occasions. For convenience, a subcommittee of the five was selected to look up a site, of which defendant was a member and acted as such. Among other sites considered was one near the Cataract Engine House, known as the Chute property; but its price was found to be $150 per front foot, which was deemed excessive, defendant concurring in this conclusion. On February 14, the day following defendant's appointment on the subcommittee, an advertisement appeared offering for sale, for $6,000, the site which was finally selected by the committee and purchased by the city. It was near the Chute property, and the price asked for it was less than half the price of the former. Between the date last stated and March 1, following, defendant entered into negotiations with the owner for the purchase of this property for himself which resulted in a contract for its purchase at the price stated, payable $100 cash, $400 upon the execution of the contract of sale, and $5,500 in monthly instalments

of $75 or multiples thereof, all deferred payments to bear interest at 6 per cent, and all papers to bear date March 1, 1909. Defendant claims that thereafter, on the evening of March 8, in casual conversation at his home with a Mrs. Guile, a cousin of his wife, he advised her of his purchase and consented to let her have the property for $6,500, and that on the following day she paid him thereon $100, this transaction being evidenced by the following document, which was introduced in evidence:

"March 9, 1909.

"Received from Sarah A. Guile One Hundred Dollars earnest money on account of purchase of Lot 5 and 24 ft. of Lot 4, Block 40, St. Anthony Falls, in consideration of the further payment of Sixty-Four Hundred Dollars on or before June 1st, 1909, subject to the approval of a certain contract entered into March 3rd, 1909, between James R. Canterbury and R. M. Newport.

"J. R. Canterbury."

On March 21, according to defendant's claim, his son, Ralph Canterbury, was at Mrs. Guile's home, and remarked to her:

"Real estate's looking up on the east side * * * Dad said that Chute Bros. are asking $150 a front foot for the property across from Cataract engine house; that they were looking at it for a site for the new repair shop."

Whereupon, it is asserted, it occurred to Mrs. Guile that the property purchased by her from defendant might be available for the repair shop, so that on March 22, she, of her own motion and without suggestion from anyone, wrote the following:

"Minneapolis, 3-22-1909.

"To the Committee on Fire Department of the City Council:

"Gentlemen:

"I will sell to you lot 5 and 24 ft. of lot 4, block 40, St. Anthony Falls, for the sum of $100 dollars per front foot or $9,000 dollars.

"Respectfully,

"Sarah A. Guile,

"615 6th St. S. E."

This letter, according to defendant's version, she handed to the city clerk, after having unsuccessfully endeavored to deliver it to defendant for the purpose of having him give it to the council for her. On the same day, at a regular meeting of the committee, the letter was read, and defendant, though present, said nothing concerning his connection with the property, but indicated his approval of the site and location. On the same afternoon members of the committee went from its room with defendant and inspected the property, and there was evidence tending to show that he advised those with him that it was large enough for the purpose and was "The best site we had looked over." Two days later the committee resolved to purchase the property at the price stated, and on March 26 made recommendation of the purchase to the council, which was duly adopted. The next day defendant received the land contract from the owner of the property from whom he had purchased it, paying a $75 instalment of the purchase price, and directing the vendor to obtain an abstract and deed, because he had sold the property and wanted to pay all cash. Thereafter he received the abstract and took it to the city attorney's office for examination. On April 6, he was advised that it was satisfactory; thereupon, he immediately requested his vendor to prepare two deeds, one from himself to Mrs. Guile, and the other from her to the city, which was done. On the next day he accompanied Mrs. Guile, and the deeds were executed. The vendor's agent, Mrs. Guile, and defendant then went to the office of the city attorney and he O.K.'d the deed to the city. They next went to the comptroller's office, where a warrant was delivered to Mrs. Guile for $9,000, which she indorsed and delivered to the vendor's agent. On their return to his office, the agent delivered to defendant a check for $3,605.46 which the vendor had previously drawn in defendant's favor. On the following day defendant recorded the deed to himself and his deed to Mrs. Guile, paying the recording fees of both upon his own initiative, and deposited the check to his own account in the bank. Shortly thereafter, according to defendant's contention, an adjustment was had between Mrs. Guile and himself of their matters, substantially as follows: She allowed him the amount of an eight hundred dollar note, with

122 M.—20.

interest, dated 1902, and due from her deceased husband to defendant, but outlawed, and lent him $800, and he paid her $308 in money and gave her his check for $200. It appeared that Mrs. Guile was of small financial responsibility.

1. Plaintiff claims that defendant anticipated the availability of the property finally recommended by the committee and the likelihood of its selection for city uses, while the matter was under consideration by the authorities, and purchased the same with intent of having it offered for sale to the city, the transaction with Mrs. Guile being merely a cover to enable him to consummate the plan, and that it is therefore entitled to recover in this action all the profits realized by him therefrom; these claims being based upon certain ordinances of the plaintiff city, and also upon common-law principles. Defendant takes issue thereon contending: (1) He was not charged by law with any duty of making purchases, and therefore in no event can he be held liable; (2) the profits of the transaction are not recoverable, the city's only right being to rescind; (3) the reasonableness of the purchase price was open to investigation, and as the value of the property was greater than the price paid by the city, there was no injury; (4) the city, having accepted and retained the benefits, has waived any rights it might otherwise have had; (5) the city had notice of the transaction by knowledge of it acquired by the city attorney before consummation.

The trial court's conduct on the trial is criticised, and exceptions were taken and are now urged to the admission, exclusion, and refusal to strike out testimony. It is, furthermore, claimed that the evidence is insufficient to sustain the verdict. Outside of matters of practice, however, the questions involved are but few and simple, and may be considered collectively. The ordinances are merely cumulative. The rights of the city, if any, rest upon a more substantial basis than local law, and we should reach the same result in their absence. The city's contention that defendant's purchase was pursuant to a scheme to sell the property to it, and that the Guile transaction was a mere subterfuge, must be sustained as a matter of law, and, had the court so instructed, we should have sustained the ruling. The evidence to the contrary is so unreasonable and im-

probable as to be unworthy of credence. It would be profitless to set out the details in this regard, as they sap its verity.

2. We come now to the consideration of the right of plaintiff to recover, assuming the city attorney's knowledge of the transaction involved before its consummation, which is broader than defendant's claim and is wholly controverted by plaintiff. We meet these facts: Defendant, while head of the fire department and an agent of the city, entrusted with the discharge of important duties on behalf of his fellow-citizens and also acting in an advisory capacity to the committee charged with the responsibility of selecting a site, acquired title to real property and caused it to be conveyed to plaintiff for such use at a material advance in price. The question is, can plaintiff recover the excess? The doctrine of constructive trust arising from abuse of fiduciary relations is too familiar to require exposition. Some consideration of its underlying principles is necessary, however, in order to determine whether it is applicable. No man can serve two masters, and "the same person cannot act for himself, and at the same time with respect to the same matter, as the agent of another, whose interest might be in conflict with his;" nor can he be allowed to profit by his own wrong, even if such be only constructive wrong. Stone v. Bevans, 88 Minn. 127, 129, 92 N. W. 520, 97 Am. St. 506; Young v. City of Mankato, 97 Minn. 4, 105 N. W. 969, 3 L.R.A.(N.S.) 849. See also Riley v. Pearson, 120 Minn. 210, 139 N. W. 361, 365. The reason of the first two propositions lies in a recognition of a natural incapacity incident to the fraility of human nature; wherefore, as approvingly quoted by the Chancellor in Toronto v. Bowes, 4 Grant Ch. 489, 506, "the wise policy of the law has therefore put the sting of a disability into the temptation as a defensive weapon against the strength of the danger which lies in the situation." See also Bay v. Davidson, 133 Iowa, 688, 691, 111 N. W. 25, 9 L.R.A.(N.S.) 1014, 119 Am. St. 650; 2 Dillon, Mun. Corp. (5th ed.) § 772. "So strictly is this principle adhered to," said Mr. Justice Vanderburgh, in Currie v. School District No. 26, 35 Minn. 163, 164, 27 N. W. 922, quoting from Aberdeen v. Blakie, 1 MacQueen 461, 471, a case largely relied on in Toronto v. Bowes, supra, "that no question is

allowed to be raised as to the fairness, or unfairness, of a contract so entered into * * *. So inflexible is the rule that no inquiry on that subject is permitted." See Bjelland v. City of Mankato, 112 Minn. 24, 26, 127 N. W. 397, 140 Am. St. 460. And that the principal may have profited by the transaction is likewise immaterial so far as concerns its legality and validity. Lum v. McEwen, 56 Minn. 278, 282, 57 N. W. 662; Toronto v. Bowes, supra, 511–513; Bowes v. Toronto, 6 Grant Ch. 112, 113; Bay v. Davidson, supra, 693.

The rule applies to officers and agents of municipal corporations. Bjelland v. City of Mankato, supra; Young v. City of Mankato, supra; Currie v. School District No. 26, supra; Stone v. Bevans, supra; Bay v. Davidson, supra; Toronto v. Bowes, supra, affirmed 6 Grant Ch. 1; 2 Dillon Mun. Corp. (5th ed.) § 772. And in such application it is re-enforced by the gravest considerations of public policy. See Currie v. School District No. 26, supra; Young v. City of Mankato, supra; Independent School District v. Collins, 15 Idaho, 535, 98 Pac. 857, 128 Am. St. 76; Cheney v. Unroe, 166 Ind. 550, 77 N. E. 1041, 117 Am. St. 391; Bay v. Davidson, supra; Toronto v. Bowes, supra, 531; Bowes v. Toronto, supra, 115. In such case, also, as where only private relations are concerned, the rule exists independently of statute (Young v. City of Mankato, supra, 6; Toronto v. Bowes, supra; Bay v. Davidson, supra; Davidson v. Guilford, 152 N. C. 436, 67 S. E. 918) and its force is not lessened nor its scope restricted by statutory declarations thereof (Independent School District v. Collins, supra; Bay v. Davidson, supra; 2 Dillon, Mun. Corp. 5th ed. 772, p. 1142).

Nor can the proscribed transaction be ratified by the municipality, except by the most unqualified acceptance by the duly constituted authorities, with full knowledge (Currie v. School District No. 26, supra), and then only to the extent of rendering the municipality liable, as upon implied contract, for the reasonable value of the service or property received (see our cases cited above; 2 Dillon, Mun. Corp. (5th ed.) p. 1149), which, of course, cannot include profits made by the officer.

The instances of application of the rule under consideration to

public officers in this state have been where the officer has sought a recovery from the municipality, and we are now for the first time called upon to determine whether it should be applied by constructing a trust in favor of the municipality upon the misconduct of an officer. The principle is the same, however, and it is settled that "if the prohibited or void contract has been executed, the officer becomes a trustee for the municipality and is bound to account for any profits which he derived from the transaction." 2 Dillon, Mun. Corp. (5th ed.) § 773, p. 1150. In Toronto v. Bowes, supra, the leading case on the subject, it was so held, and every phase of the question here involved was there discussed. "A corporate officer, appointed *ad consulendum,*" said the Chancellor at page 514, "cannot acquire an interest in a matter upon which he has to deliberate in his official capacity for the benefit of others." See also page 515 of the same case. And it is immaterial that defendant may not have affirmatively used his influence in favor of the transaction. See Toronto v. Bowes, supra, 511, et seq.; Bay v. Davidson, supra. Acceptance of public office implies the obligation that from that time on, while the relation continues, the officer shall subordinate his private interests to his public duties. A ratification in such cases, if effective for any purpose, cannot operate so as to entitle the officer to retain the benefits accruing to him from his disregard of his incapacity, but will amount merely to an acceptance of the bargain made, together with its profits. Nor did the acts of the city attorney, assuming them to have been as defendant claims, work either waiver or estoppel. See 2 Dillon, Mun. Corp. (5th ed.) § 799. See also Andrews v. School District No. 4, 37 Minn. 96, 33 N. W. 217. The plaintiff's recovery is sustained.

3. The views expressed render alleged errors in the charge immaterial, and we find no ground for reversal in the rulings on evidence. Some questions of practice have been raised and argued at length, however, and to prevent recurrence we will advert to them briefly. The court's action is criticised because of an alleged rebuke of defendant's counsel, constituting, it is claimed, a breach of discretion. A new trial will seldom be granted on this ground. See cases cited in 2 Dunnell, Minn. Dig. § 7098. In the present case it appeared

that the complaining counsel continually interjected remarks during cross-examination by plaintiff of defendant's witnesses, a reprehensible practice tending to prevent a fair and orderly trial and to bring the court into disrepute. Vigorous preventive measures are commendable, and assignments of error thereon are entitled to slight consideration if it appears that the court's reprimand was in consequence of such misconduct.

Other assignments of error raise the more serious question of the court's reflections upon the credibility of witnesses. We are not agreed upon whether the court's action in this regard would constitute reversible error were the case one requiring submission to a jury, a majority holding it was not; but we are unanimously of opinion, and are constrained to say, that it was a perilously near approach to the line. If the integrity of trial by jury is to be preserved, as it must be, the credibility of witnesses should be left entirely to the jury; and insinuations, comments, or suggestions by the court indicative of belief or unbelief in their testimony cannot be tolerated.

Order affirmed.