W. S. JAMES, Appellee, v. CITY OF HAMBURG et al., Appellees; MERCHANTS' EXCHANGE BANK, Appellant.

**CONTRACTS:   Validity—Conflict of Private and Public Interest—**
**1  Public Policy.**   A contract with a public officer, under which his private interest *may* conflict with the interest of the public which he is serving and under which he *may* be tempted to violate his duty to the public, is against public policy and void.

PRINCIPLE APPLIED:  One Baldwin, during the same period of time, was a member of the city council and the cashier of, and a partner in, a firm engaged in the banking business.   The city, through its counsel, contracted for the construction of certain curbing, agreeing to pay the contractor therefor upon the performance of the work and approval and acceptance by the city. The contractor thereafter arranged with said bank to advance money to carry on the work.   To this end the contractor, before any work was done, gave the bank a written assignment of all compensation to become due for the work.   Long after this, the contractor gave one James a like assignment in payment for materials furnished by James.   James evidently knew of the former assignment to the bank.   The bank, under its agreement, advanced large sums to the contractor.   The curbing was constructed *in accordance with the contract* and duly approved and

accepted by the city. The bank and James both claimed the compensation due from the city. *Held*, the conflicting interest of the city in the approval of the work and the interest of the bank to secure the repayment of the money advanced, rendered the assignment to the bank absolutely void.

ESTOPPEL:   Equitable Estoppel—Action Induced by Fraud.   One
2   may not predicate an estoppel on conduct which he has induced by his own fraud.

PRINCIPLE APPLIED:  A contractor, constructing curbing for a city, assigned to a bank, as security for money to be advanced to carry on the work, *all* sums to become due under his contract. Later, he became indebted to a materialman. On the knowingly false statement by the contractor and a bank official (made to forestall an attachment suit) that the bank would receive from the city enough to pay both claims, the materialman accepted from the contractor an order on the bank for any excess remaining after the bank's claim was paid. Still later, the contractor assigned to the materialman the identical claim that he had theretofore assigned to the bank. The materialman pleaded the invalidity of the bank's assignment because the bank was a partnership and one of the members thereof was a member of the city council during the entire transaction. The bank pleaded an estoppel to so plead because of the taking by the materialman of the first order, claiming that it (the bank) was thereby misled, and did nothing further to protect itself. *Held*, the false statement by the bank official precluded any possible estoppel.

*Appeal from Fremont District Court.*—O. D. Wheeler, Judge.

Friday, February 18, 1916.

Action in mandamus to compel the city council to deliver certain certificates due under a contract for curbing entered into between the city and H. C. McMaken & Sons Company. The controversy is between the plaintiff and the intervener. Each claims under separate assignments from McMaken & Sons Company. Judgment and decree for the plaintiff. Intervener appeals.—*Affirmed.*

*R. C. Campbell,* and *Tinley, Mitchell & Thornell,* for appellant.

*T. S. Stevens,* for appellee.

Gaynor, J.—This case involves a controversy between the plaintiff and the Merchants' Exchange Bank of Hamburg, intervener, over the right to certain certificates due from the city of Hamburg to H. C. McMaken & Sons Co., under a contract for the construction and building of curbing in the defendant city. The controversy arises in this way: W. C. James operates a lumberyard in the city, and at various times, hereinafter mentioned, furnished material to McMaken & Sons Company to be used in the construction of said sewers, and claims a right to the certificates under an assignment made to him by McMaken & Sons Company. The intervener claims a right to the same certificates for money advanced by it to McMaken & Company for the construction of the sewers, under an assignment from McMaken & Sons Company. The plaintiff brought his action in mandamus to compel the issuing of the certificates to him. The bank intervened in the action, and asked an order on the city that the certificates be delivered to it. The court found in favor of the plaintiff and entered judgment accordingly, and from this the intervener appeals. The city made no controversy in the suit, but expressed a willingness to deliver the certificates either to the plaintiff or intervener, as the court should direct.

The facts of the case are as follows: On the 4th day of April, 1912, the defendant city contracted with McMaken & Sons Company to build certain curbing in the city. In order to do this, it was necessary for McMaken & Company to borrow money. On the 22d of May, 1912, McMaken & Company went to appellant bank and made arrangements with the bank to furnish money to carry on the work. To this end, and for this purpose, on that day, this company gave to the bank an assignment as follows:

"For and in consideration of certain sums of money, to be advanced to H. C. McMaken & Sons Co. of Plattsmouth, Nebraska, by the Merchants Exchange Bank of Hamburg, Iowa, and in consideration thereof the said McMaken & Sons

Co. aforesaid hereby assign, transfer and deliver to said Merchants Exchange Bank all the certificates that shall be issued in a certain improvement of curbing and parking in the city of Hamburg, in all papers relating thereto now on file or hereafter to be filed, in the office of the city clerk of Hamburg, Iowa, and it is agreed and the said city clerk of Hamburg, Iowa, is hereby authorized and directed to deliver the said certificates of assessment to the said bank. And it is further agreed that this shall be the only assignment that shall be made of the aforesaid certificates.

"(Signed) H. C. McMaken & Son Co.<br>"By G. H. Decker, Secy."

At and after the time that the assignment was made, the intervener bank advanced money to the McMaken Company on checks, McMaken & Company giving notes from time to time to cover the advancements. The notes were as follows: May 22d, the date of the assignment, $1,000; June 11th, $1,000; June 27th, $1,000; July 8th, $500; July 22d, $300; amounting in all to $3,800. These notes were signed by H. C. McMaken & Sons Company, by G. H. Decker, G. H. Decker having full authority to represent McMaken & Sons Company at all times. There was also an overdraft, beginning with July 27, 1912, in the appellant bank against said company over and above the amount of the notes, of $137.39.

The appellee, W. C. James, furnished material used in the curbing done by McMaken & Sons Company, and there is due the plaintiff James from said McMaken & Sons Company, $1,587.55, with interest from February 26, 1913. There is due the intervener bank on the notes and overdraft, $3,937.39, with 8% interest on the notes from the date of the notes, and 6% interest on the overdraft.

McMaken & Sons Company constructed the work in accordance with their contract, and the same was accepted by the city during the year 1913. The exact date does not appear. Upon the completion of the work, there was due H. C.

McMaken & Sons Company from the city, the sum of $4,500, and this is the fund which both the intervener and plaintiff seek to have appropriated to the payment of their claims.

On the 22d day of July, 1912, the following instrument was executed by McMaken & Sons Company, addressed to the intervener bank and accepted by its cashier, J. F. Baldwin:

"Pay to W. S. James of Hamburg, Iowa, all moneys due us from the proceeds of certificates for curbing, above the amount owing by us to said Merchants' Exchange Bank of $3,832.37. Said amount above this debt to be applied as a credit on account owing by us to said James."

On the 26th day of February, 1913, McMaken & Sons Company made the following assignment to the plaintiff:

"For valuable consideration, I hereby sell, assign and transfer to W. S. James, of Hamburg, Iowa, to the extent of $1,587.55 of my claim and the claim of H. C. McMaken & Son Co. of Plattsmouth, Nebraska, against the city of Hamburg, Fremont County, Iowa, on account amount due or found to be due said H. C. McMaken & Son Co. in their favor against said city of Hamburg, on account curbing contract, and I hereby direct, request and authorize the said city council, the city of Hamburg, August Wagner, the city clerk and E. G. Tiller, mayor of said city, or their successors in office, to issue and make payable directly to the said W. S. James, warrants, improvement certificates, or other evidence of indebtedness hereafter to be issued by said city of Hamburg, said H. C. McMaken & Son Co., on account their contract for curbing on Argyle and Main Streets, in said city of Hamburg, it being expressly understood and agreed that the said W. S. James furnished material which was used in construction of said curbing, upon which there is a balance due of $1,587.55. And the said W. S. James is further expressly authorized to receipt said city in my name in name of H. C. McMaken & Son Co. in full of said claim to the amount of his claim,

or for which he is given improvement certificate, warrants or other evidence of indebtedness.''

On the 2d day of September, 1913, a notice was given the city council and the mayor of the town of Hamburg by W. S. James, demanding that the improvement certificates be issued to him, and setting out that he furnished material for the work.

The following stipulation was entered into between the parties, on the trial: ''It is agreed that during the time referred to herein, and during the happening of the transactions in question, J. F. Baldwin was the cashier of the intervener bank, and was a member of the said partnership.'' It appears that, during all the time covered by the transactions herein complained of, Baldwin was a member of the city council of the city of Hamburg. These are all the facts material to a proper understanding of the controversy.

The plaintiff brought an action in mandamus to compel the city council to deliver to him certificates due McMaken & Company in the amount of his claim, and to restrain the city from issuing certificates or warrants to any other person until a hearing was had upon his claim. The Merchants' Exchange Bank intervened in said action, alleging that, prior to the completion of the work and during its progress, the McMaken Company was a copartnership; that they were in need of funds in order to pay for labor and material used in the construction of the work; that, in order to secure the necessary funds, they made an agreement to assign to the intervener the evidence of indebtedness or certificates to be issued when the work was completed; that they did assign so much of the certificates to the intervener as would be sufficient to repay for the money advanced; that, by virtue of the assignment, the intervener did advance, at various times, a sum of money aggregating $3,937.39; that this money was used in paying for labor and material used in carrying out the contract with the city; that the assignment made to the bank by the construction company was filed with the clerk of the city on the

24th day of May, 1912; that the plaintiff made a contract which was subject to intervener's claim, providing that, after intervener's claim was paid and satisfied, he was to have sufficient of the certificates left assigned to him in payment of his work, and to satisfy him for material furnished. Intervener asked the court to direct the defendant city to issue to it certificates due for the construction of said curbing.

The plaintiff, answering the petition of intervention, alleges that the contract of assignment relied upon by intervener was made by J. F. Baldwin, who was cashier of the intervener bank; that the intervener bank was a copartnership and he was interested in the business of the intervener and the profits and losses thereof; that he was also executive officer in general charge of intervener's bank, and was also, during all the time, a member of the city council, and took part in the proceedings of the city council relating to the curbing improvements for which he claims now that the city is indebted to McMaken & Company. Plaintiff alleges that, by reason thereof, the alleged contract of the said bank with the contractors is prohibited by law and absolutely void, and is against public policy, founded upon illegal consideration, and is void; denies that all the money drawn by McMaken & Sons Company from intervener's bank was used in the construction of the curbing, but avers that a large part of it was used in paying the expenses of G. H. Decker and other bills, for which the city was not liable. He further prays that the city of Hamburg be enjoined from in any way recognizing or enforcing the alleged contract of intervener, or from issuing any certificates or warrants to said intervener, or from paying any cash to said intervener for any of the reasons alleged by the intervener.

The intervener, replying to plaintiff's answer, denies all the allegations thereof, and further replying says that plaintiff is now estopped from urging the claim which he makes, for the reason that plaintiff consented that the bank receive the certificates under the terms of the contract of July 22,

1912, and has fully ratified the action of the bank; that the city has accepted the work, and the contract has been executed; that nothing remains but to deliver the certificates; that McMaken & Sons Company have used the money received from the bank, and had the benefit thereof; that the city has received the benefits of the work done by McMaken & Sons Company in the construction of curbing and other improvements.

There is practically no controversy in this case over the facts. The controversy, therefore, is peculiarly a question of law. It will be noted that the work provided for in the contract between the city and McMaken & Sons Company was done in accordance with the contract and accepted by the city, and that there is now due McMaken & Sons Company $4,500; that the city is ready and willing to issue certificates for the amount due, as provided by statute, to the party entitled to the same. The only controversy is between James, the plaintiff, and the bank, intervener. It will be noted that the assignment made by McMaken & Sons Company to the bank, under which it claims, was made long prior to the assignment to James, under which he claims the right to the funds in the hands of the city; and the bank, nothing further appearing, would, by virtue of this priority of assignment, be entitled to be reimbursed out of the funds, as against any claim made by James under his assignment.

1. CONTRACTS: validity: conflict of private and public interest: public policy.

James pursued none of the steps required by law for securing a lien upon the fund. He must, therefore, rely for his claim upon the assignment made to him by McMaken & Sons Company. James, the plaintiff, however, claims that the assignment to the bank was void for the reason that the bank was a copartnership; that Baldwin was a member of the copartnership, interested in the bank financially and otherwise, and, at the same time, was a member of the city council. No work had been done under the contract between McMaken & Sons Company and the city at the time the assignment was

made by McMaken & Sons Company to the bank. This assignment was taken from the construction company by Baldwin for the use and in the interest of the bank. The bank undertook to finance the deal for McMaken & Sons Company; to furnish them money for the construction and work. The bank was, therefore, interested in seeing that the work was performed, and that the certificates were earned. Before the certificates could be issued, the work of McMaken & Sons Company had to be approved and accepted by the city. The bank, therefore, and Baldwin were interested in having the city approve and accept the work. The money advanced by them and covered by the assignment could only be recovered from the city when the work was approved and accepted by the city. Baldwin was a member of the city council. It was his right and duty, in the interests of the city, to see that the work was completed in accordance with the terms of the contract before accepted. He was, therefore, charged with the duty of protecting the rights of the city as against any dereliction on the part of McMaken & Sons Company. He was financially interested in having the work accepted. Upon approval and acceptance by the city depended his right to the funds in the hands of the city, the result of the McMaken contract. He was called upon to serve two masters; one, with which his interest financially was bound up; the other, in which was involved his public duty as an officer of the city. He was bound, therefore, to serve both faithfully—the bank of which he was an officer and in which he was financially interested, and the city, of which he was also an officer and servant. It is an old saying that a man cannot serve two masters, but we think the case here is even stronger than that. He was called upon practically to serve himself in a transaction in which his duty called him to serve another. These interests might be antagonistic. He might be called upon to say which he would serve—himself or the one to which he owed a public duty. If the contract had not been performed by the construction company as required by its contract, and was pre-

sented to the city in an unfinished condition, or in a condition
not in compliance with the contract, a temptation would be
offered to the intervener, represented by Baldwin, to disregard
his public duty, and yield to the temptation of personal
interest. It is this that the law guards against. It is this sort
of a condition that the law is intended to avoid. It is not
necessary that there be evidence of dereliction of duty on
the part of a public officer to bring these contracts within the
inhibition of the law. The inhibition applies when the con-
tract is of such a character that, in the very contract and in
the making of it, a temptation to dereliction of duty is cre-
ated. The law intends that these public officers should, like
Caesar's wife, be above suspicion and temptation.

Section 668 of the Code of 1897, 14th subdivision, pro-
vides:

"No member of any council shall, during the time for
which he has been elected, be appointed to any municipal office
which shall be created, or the emoluments of which shall be
increased, during the term for which he shall have been
elected; nor shall he be interested, directly or indirectly, in
any contract or job for work, or the profits thereof, or services
to be performed for the corporation."

Section 1056-a31, Code Supplement, 1907, though relat-
ing to cities of the first class or with special charter having
a population of 25,000 or over, organized under Chapter 14-C,
Title V, of said Supplement, with a commission form of gov-
ernment, though not directly bearing upon cities of the kind
that we are dealing with here, emphasizes the policy of the law
touching the conduct of public officers in matters relating
to the city, and says:

"No officer or employee elected or appointed in any such
city shall be interested, directly or indirectly, in any contract
or job for work or materials, or the profits thereof, or services
to be furnished or performed for the city."

*Bay v. Davidson*, 133 Iowa 688, is, in principle, a case in
point. In this case, one Binning, a merchant in the town of

Grand River, in Decatur County, while a member of the city council, sold and delivered to and for the use of the town, certain material which was used by the town in constructing and repairing sidewalks. The plaintiff, a citizen and taxpayer, brought an injunction to restrain the city from paying Binning for the same. Defendant alleged that the sale to the city was in open market and in good faith and for a reasonable value; that there were but two merchants in the town dealing in the material furnished, both of whom were members of the city council. Defendant alleged further that the fact that Binning furnished the lumber was well known to the plaintiff and other resident taxpayers, and they made no objection thereto, and pleaded this fact as an estoppel. The plaintiff demurred to this answer, and this demurrer was sustained.

This court sustained the ruling upon the demurrer, and said:

"Now, by general law, contracts of sale as here shown cannot be upheld because they are not only violative of the fundamental law of agency, but are contrary to public policy. The defendant Binning was an officer and agent of the town, and the duty and obligation which the law cast upon him in such relation forbade him from acting in any transaction for himself as an individual on the one part, and as an officer and agent of the town on the other part. And it can make no difference that in the particular transaction, he refrained from voting for the purchase of goods as made. It was his duty to vote, and he could not reap an advantage by avoiding that duty."

And the court quoted with approval from Dillon on Municipal Corporations, (4th Ed.) § 444, as follows:

"The law will in no case permit persons who have undertaken a fiduciary character or a charge to change or invert that character by leaving it and acting for themselves in a business in which their character binds them to act for others."

The intervener in the instant case had its own interests

to serve in securing an approval and acceptance of the work done by McMaken & Sons Company. Baldwin was charged with the duty to serve the intervener and to secure for it the proceeds of the contract with McMaken & Sons Company. This could only be secured by having the work of McMaken & Sons Company approved and accepted by the city. He had also a duty to the city to see to it that the work was not accepted unless it conformed strictly to the requirements of the contract, and was done in fulfillment of its terms. This duty he owed to the city and its citizens. The acceptance of this assignment created in Baldwin a double character, and invited him into a position where he might be tempted to use the opportunity to secure his own interests, at the expense of the city, whose interest, as a public officer, he was, under the law, bound to serve.

Some men are big enough and strong enough to waive all personal considerations and discharge fairly and impartially a public duty, but not all men are so constituted. The law would remove from public officers these temptations to which, owing to the weakness of human nature, men do sometimes yield.

"One who has power, owing to the frailty of human nature, will be too readily seized with the inclination to use the opportunity for securing his own interest at the expense of that for which he is intrusted." *Bay v. Davidson,* 133 Iowa 688, 691.

As said by Judge Dillon, in Section 773 in his work on Municipal Corporations, 2d Vol., 5th Ed.:

"At common law and generally under statutory enactment, it is now established beyond question that a *contract made by an officer of a municipality with himself,* or in which he is interested, is contrary to public policy, and tainted with illegality; and this rule applies whether such officer acts alone on behalf of the municipality, or as a member of a board of council. . . . The fact that the interest of the offending officer in the invalid contract is indirect and is very small is

immaterial. . . . It is impossible to lay down any general rule defining the *nature of the interest of a municipal officer* which comes within the operation of these principles. Any direct or indirect interest in the subject-matter is sufficient to taint the contract with illegality, if the interest be such as to affect the judgment and conduct of the officer either in the making of the contract, or in its performance.''

In Section 772 of the same work, Judge Dillon says:

''The principle generally applicable to all officers and directors of a corporation is that they cannot enter into contracts with such corporation to do any work for it, nor can they subsequently derive any benefit personally from such contract. To deny the application of the rule to municipal bodies would . . . be to deprive the rule of much of its value; for the well working of the municipal system, through which a large portion of the affairs of the country are administered, must depend very much upon the freedom from abuse with which they are conducted. Nothing can more tend to correct the tendency to abuse than to make abuses unprofitable to those who engage in them, and to have them stamped as abuses in courts of justice. . . . It is contrary to good morals and public policy to permit a municipal officer to *enter into contractual relations* with the municipality of which he is an officer. The principles of the common law and of equity are generally supplemented and made more emphatic *by statutory enactments* prohibiting any municipal officer from being *interested, directly or indirectly, in any municipal. contract,* or in the rendition of services for the municipality outside of those required from him by virtue of his office.''

It is the universal holding of the courts that, in determining the validity of contracts such as we are dealing with, it is. not necessary, to avoid the contract, that it be adjudicated. and determined that the parties stipulated for corrupt action. It is enough for the court to know that the contract tends to those results, and furnishes a temptation to the plaintiff to resort to corrupt means or improper influences to accomplish

the result. It is the general tendency of the decisions of the courts of this country to frown upon all attempts and all contracts and all actions on the part of public officers which tend to place them in a position where they will be tempted to act from motives other than a fair and honest discharge of their public duty; and where it appears from the contract sought to be enforced that the tendencies of such contract, if allowed, will be to place the public officer in such a position that his personal interests conflict with his public duty, in all such cases the contract will be held illegal, and the courts will leave the parties in the position in which they placed themselves.

While the intervener did not take an assignment of the contract, it did take an assignment of the proceeds of the contract. These proceeds could only be derived from the city, and were only available to the intervener when the work done under the contract was approved and accepted by the city. This placed Baldwin in a position where a condition might arise in which he would be called upon to serve either his own personal interest, or to discharge faithfully his public duty to the city. A condition might arise in which there would be a clear conflict between his duty to himself and his bank, and this public duty to the city and its citizens. The courts cannot approve these contracts, because they are against public policy, and open the door through which fraud may enter and corrupting influences come, that embarrass the public officer in the discharge of his public duty. We think in this case that this contract cannot be recognized any more than if Baldwin, for the bank, had taken an assignment of the original contract with its accruing benefits to himself, while an officer of the city, charged with the duty of seeing to it that the contract was fully and faithfully performed before the work was approved and accepted. See, also, as bearing upon this question, *Harrison County v. Ogden,* 133 Iowa 677, 678; *Norbeck & Nicholson Co. v. State,* (S. D.) 142 N. W. 847; *Young v. City of Mankato,* (Minn.) 105 N. W. 969; *Lum v. Clark,*

(Minn.) 57 N. W. 662; *Weitz v. Independent Dist. of Des Moines,* 78 Iowa 37; *Currie v. School Dist. No. 26 of Murray County,* (Minn.) 27 N. W. 922; *Berka v. Woodward,* (Cal.) 57 Pac. 777.

Our attention is called by the intervener to certain decisions of the courts which it is claimed support its contention, notably, *Diver v. Keokuk Savings Bank,* 126 Iowa 691. There are some statements in this case that would seem to support intervener's contention, but a careful review of the case itself and of the authorities cited, we think, does not sustain such contention. We rather think that case sustains the contention of the plaintiff herein. The contract between the city and McMaken & Sons Company is not tainted with any of the fraud complained of here. That contract is valid. This case involves only the right of the bank to receive the proceeds of that contract. The money has not been paid and the city is not seeking to avoid the contract after performance, but stands ready to pay the same to anyone who is legally entitled to the proceeds. Under our construction of the law, the intervener has placed itself in a position so that it is not entitled to claim the proceeds under the assignment, whatever its other rights may be. It bases its claim on the assignment, and the assignment is void. The same doctrine is found in *Kagy v. Independent District of West Des Moines,* 117 Iowa 694, and cases therein cited. The other cases cited by intervener we have examined, but do not find them antagonistic in principle to the doctrine herein announced.

We come next to the contention made by intervener that the plaintiff is estopped from asserting that this contract is illegal and void for the reason that, after the assignment relied on by intervener was made, McMaken & Sons Company made and delivered to the plaintiff bank, on the 22d day of July, 1912, the order hereinbefore set out, reading as follows:

2. ESTOPPEL: equitable estoppel: action induced by fraud.

"To the Merchants' Exchange Bank, Hamburg, Iowa:

"Pay to W. S. James of Hamburg, Iowa, all moneys due us from the proceeds of certificates for curbing above the amount owing by us to said Merchants' Exchange Bank of $3,837.37; said amount above this debt to be applied as a credit on account owing by us to James.

"(Signed)    McMaken & Sons Company.

"Accepted July 26, 1912, Cashier of Intervener Bank."

There might be something in this contention, were it not for the fact disclosed in the record that this order was made on the representation of the intervener and Decker that there was due from the city $5,700. McMaken & Sons Company were about to move from the city with their tools and machinery. Plaintiff threatened to attach, and Baldwin and Decker then made the statement that there would be $5,700 due from the city, and the evidence shows that the order was made with this understanding on the part of the plaintiff.

We have no doubt that this order was procured at the instance of Baldwin, for the purpose of forestalling plaintiff in any effort to recover by legal proceedings the amount due him at that time. Decker, representing McMaken & Sons Company, undoubtedly knew that the statement was not true, and that amount was not due from the city to the company. Baldwin, as an officer of the city, must, too, have known that this statement was false. Both must have known that the amount due from the city did not exceed, in any considerable sum, the amount claimed by the intervener under its assignment. We think this order so procured does not work an estoppel upon the plaintiff.

This disposes of all the questions raised in the case, and the judgment of the district court is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.