Craig H. BORLIN, Appellee,

v.

CIVIL SERVICE COMMISSION OF the CITY OF COUNCIL BLUFFS, Iowa, Appellant.

No. 68806.

Supreme Court of Iowa.

Sept. 21, 1983.

Troyce A. Wheeler, Anderson & Wheeler, Council Bluffs, for appellee.

Terrence L. Timmins, Council Bluffs, for appellant.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ, and CARTER, JJ.

HARRIS, Justice.

Petitioner, a police officer, was fired by his department chief for refusing to discontinue his secondary vocation as a voice stress analyst. Borlin appealed his dismissal to the Council Bluffs civil service commission. After the commission ruled in support of the chief Borlin sought review by the district court, pursuant to Iowa Code section 400.27 (1981). The district court reversed the commission and ordered reinstatement. We agree with the police chief, and the commission, that there was a potential conflict of interest between Borlin's duties as a police officer and his part-time vocation in voice stress analysis. We therefore reverse the decision of the district court and affirm the decision of the city civil service commission.

Borlin served in the police department for seven years and seems to have been an excellent officer. Regretably, exemplary service as an officer does not necessarily, or even often, call for exemplary pay. Police

officers commonly find it necessary to seek secondary employment. Borlin's situation was no different and until 1980 he was also engaged in a landscaping service. Because landscaping was unrelated to his duties as an officer, the police department left him free to pursue both occupations.

In late 1980 Borlin sought legal advice about licensing requirements for establishing a voice stress analysis agency. The primary function of such agencies is to provide screening services for employers who wish to test potential or recently hired employees. Borlin was advised that his enterprise would require a private detective license from the Iowa department of public safety. See Iowa Code ch. 80A. The department is Iowa's chief law enforcement office and controls the detective licensing bureau.

Borlin asked the department for information concerning a license for his proposed business and was advised that, as a police officer, he was eligible only for a restricted private detective license. Such a license allows a police officer to perform only security or guard work and voice stress analysis. He went ahead with his request for a license.

Responding to a request for information on Borlin the Council Bluffs police chief informed the public safety department that he, as chief, would not approve of his officer obtaining a detective license, regardless of its restrictions. The chief then notified Borlin in writing of his reasons for disapproval, citing, among other things, a potential for conflict of interest.

Despite the chief's protests, a restricted detective license was issued in June, 1981. Borlin then proceeded to incorporate his venture as "The Craig Agency." He leased office space and accepted voice stress analysis screening jobs from employers. His business was listed in the advertising division of the telephone book under detective agencies, but not under investigators.

No unethical conduct occurred during the seven months in which Borlin operated his agency, and no interference with his police duties occurred. Two situations did arise, however, that might qualify as "potential" conflicts of interest. In one of them Borlin examined a filling station employee suspected of theft.

In August the chief directed Borlin to discontinue his detective agency and to relinquish his license. When he refused to do so he was fired.

■ Our review is de novo. We give weight to the district court's findings but are not bound by them. *Millsap v. Cedar Rapids Civil Service Commission,* 249 N.W.2d 679, 683 (Iowa 1977).

I. The chief's authority to dismiss Borlin stems from two sources, one in a statute and one in a local ordinance. Iowa Code section 400.19 enables the chief to "peremptorily suspend, demote, or discharge" any subordinate for "disobedience of orders." Section 27 of the Council Bluffs police departmental rules and regulations provides that "[a]ll members shall promptly obey any *lawful* order emanating from any superior officer. Obedience to an unlawful order is never a defense for an unlawful action." (Emphasis added.)

Our cases interpreting the statute have required "that a suspension or dismissal pursuant to section 400.19 must be for conduct detrimental to the public interest." *Matter of Fairbanks,* 287 N.W.2d 579, 581 (Iowa 1981) (reversing fireman's discharge for refusing to take polygraph test); *Millsap,* 249 N.W.2d at 687 (upholding police officer's suspension and demotion for off-duty public intoxication); *Klein v. Civil Service Commission,* 260 Iowa 1147, 1157, 152 N.W.2d 195, 201 (1968) (reversing firemen's suspension for releasing news of labor dispute in violation of order not to release news of departmental affairs without chief's prior approval).

We find no statute which specifically prohibits police officers from secondary employment as private investigators, polygraph operators, or guards. Iowa Code chapter 80A requires a private detective license for each of these occupations, but makes no mention that off-duty police officers are prohibited from engaging in them.

■ Iowa Code section 80A.2 exempts certain persons, including police officers, from the requirement of obtaining a private detective license. The question arises whether the exemption applies only to on-duty police officers, or has general application to police officers whether on or off duty. Notwithstanding a contrary view expressed in an attorney general's opinion, Hayward to Miller # 82–77 (July 15, 1982), we think the legislature intended to limit the exemption to police officers while they are on duty. We find no indication that the exemption was intended to be personal to the officer. Rather, it appears to preserve to on-duty officers their traditional investigative function as members of a police force. Section 80A.2 is not a legislative pronouncement that off-duty police officers can engage in activities under that chapter without a license.

Other statutes indicate that the chief's order to Borlin was lawful and that disobedience of it was detrimental to the public service. Various statutes require strict confidentiality of police records, criminal histories, and intelligence data. A police officer can obtain or disseminate this information only for official purposes in connection with the prescribed duties of a criminal justice agency. Iowa Code §§ 68A.7, 692.2 through 692.7. Another statute prohibits any public officer, under color of the office, from receiving compensation for performing any service or duty required by law. Iowa Code § 721.2. *See also* Iowa Code § 68B.6.

Taken together the foregoing statutes disclose a pronounced sensitivity to the conflicts that can arise between the official and private affairs of public officials. The legislature obviously intends to discourage such conflicts. Our determination of this appeal is made in the light of that legislative intent.

II. The department of public safety has also been sensitive to possible conflicts of interest for police officers who seek secondary employment. The department has sought and relied upon various attorney general opinions considering licensing requests. *See* 1970 Op.Att'y.Gen. 56; 1974 Op.Att'y.Gen. 631–32; 1978 Op.Att'y.Gen. 338–41. On the basis of these opinions the department considered voice stress analysis to be "non-investigatory" and accordingly issued the restricted license to Borlin.

We do not think the propriety of a police officer's secondary vocation should turn on the distinction, real or imagined, between its investigatory or non-investigatory nature. Rather, the question should turn on conflicts and potential conflicts of interest. In some secondary vocations, such as security guards, there is little likelihood of such a conflict.

■ Borlin argues that the issuance of the license justified his disobedience. He thinks his chief's order was in contradiction of the license and was therefore unlawful. We disagree. The issuance of the restricted license did nothing more than authorize Borlin's operation so far as such a license would authorize any similar business conducted by someone not an officer. The license could not and did not have the effect of superimposing the judgment of the licensing official over the departmental directives of various police forces throughout the state.

■ III. Our cases on the subject of outside work of off-duty police officers are few, but we think the rules are clear. A city may prohibit its officers from undertaking secondary employment. *Jurgens v. Davenport R.I. & N.W. Ry. Co.,* 249 Iowa 711, 716, 88 N.W.2d 797, 801 (1958). Where not prohibited by some lawful directive an officer may pursue the secondary employment so long as the off-duty activities do not interfere with and are not required by official duties. *State v. Hinshaw,* 197 Iowa 1265, 1272, 198 N.W. 634, 637 (1924) (if "wholly consistent with public duties" officer can perform off-duty service and earn money from another source).

The question then becomes whether Borlin's off-duty employment was "wholly consistent" with his public duties. The city claims his off-duty business was inherently inconsistent because it created a "potential"

conflict of interest. We have described the concept of "potential" conflict of interest in *James v. City of Hamburg,* 174 Iowa 301, 156 N.W. 394 (1916). *James* involved a city council member who was also a bank officer handling a city contract. We said:

> [James] was called upon to serve two masters; one, with which his interest financially was bound up; the other, in which was involved his public duty as an officer of the city. He was bound, therefore, to serve both faithfully—the bank of which he was an officer and in which he was financially interested, and the city, of which he was also an officer and servant. It is an old saying that a man cannot serve two masters, but we think the case here is even stronger than that. He was called upon practically to serve himself in a transaction in which his duty called him to serve another. These interests might be antagonistic. . . . It is this that the law guards against. It is this sort of a condition which the law is intended to avoid. It is not necessary that there be evidence of dereliction of duty on the part of the public officer to bring these contracts within the inhibition of the law. The inhibition applies when the contract is of such a character that, in the very contract and in the making of it, a temptation to dereliction of duty is created. The law intends that these public officers should, like Caesar's wife, be above suspicion and temptation.

> .     .     .     .     .

> Some men are big enough and strong enough to waive all personal considerations and discharge fairly and impartially a public duty, but not all men are so constituted. The law would remove from public officers these temptations to which, owing to weakness of human nature, men do sometimes yield.

*Id.* 174 Iowa at 309–10, 312, 156 N.W. at 396–97. *See also Wilson v. Iowa City,* 165 N.W.2d 813, 822 (Iowa 1969); C. Rhyne, The Law of Local Government Operations 152–53 (1980).

■ The city suggests a number of possible conflicts between Borlin's two vocations.

We think at least one of them qualifies as a potential conflict of interest. An employer, a private client in Borlin's polygraph business, might have economic interests that do not square with Borlin's public duty. The employer may wish merely to recover stolen property and might agree with the employee not to press criminal charges. Does the employer's agreement bind Borlin in his capacity as a police officer? Suppose a separate investigation by other officers on the force lead to a prosecution. Should Borlin supply information he acquired in behalf of the employer? We think the chief's action was justified under both the statute and ordinance; his order was lawful and Borlin's disobedience was detrimental to the public service.

Our holding rests on its specific facts, especially the fact of the chief's order. We do not suggest that the chief was required to prohibit Borlin's secondary employment. Neither do we hold that the chief could have prohibited other secondary vocations, such as positions as security guards, which would seem to present less potential for conflicting interests. We merely hold that the chief acted within his authority in prohibiting Borlin's request.

■ IV. Borlin also claims that the chief's order violated his right to freedom of enterprise under the fourteenth amendment of the United States Constitution. *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). Like other fundamental rights, however, this right is subject to reasonable governmental regulation which is necessary to protect public health, safety, or welfare. *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); *State ex rel. Iowa Department of Health v. Van Wyk,* 320 N.W.2d 599, 605 (Iowa 1982).

■ We previously found a city ordinance prohibiting secondary employment of police officers was not so arbitrary or unreasonable as to be void. *Jurgens,* 249 Iowa at 716, 88 N.W.2d at 801. Because we find the chief's order was lawful and that Borlin's disobedience was detrimental to the

public service it follows that this constitutional claim is without merit.

The district court's determination to the contrary was in error.

REVERSED.