**Peggy CLAY, Appellee,**

v.

**CITY OF CEDAR RAPIDS and Cedar Rapids Civil Service Commission, Appellants.**

**No. 96–2087.**

Court of Appeals of Iowa.

Feb. 25, 1998.

Mohammad H. Sheronick, City Attorney, Cedar Rapids, for appellants.

William H. Roemerman of Crawford, Sullivan, Read, Roemerman & Brady, P.C., Cedar Rapids, for appellee.

Heard by HUITINK, P.J., and STREIT and MAHAN, JJ.

STREIT, Judge.

Defendants appeal the trial court's reversal of firefighter Peggy Clay's discharge from the fire department for failure to follow a direct order of her supervisor to enter his office. Because we find Clay's refusal did not amount to misconduct under the circumstances and was not detrimental to public interest, we affirm the trial court.

## I. Background & Facts.

Clay was a Cedar Rapids firefighter since 1988. She was discharged in January 1994 for refusing to obey a direct order of her station lieutenant, Lieutenant Santana.

Clay's employment history prior to her discharge is significant. In June 1991, Clay received an oral reprimand for violating the department's sick leave policy. She claims she was disciplined for calling in two minutes after the deadline. In August 1992, Clay was put on daily evaluations as a disciplinary measure for not placing a magnetic shield designating her station number on her helmet. In May 1993, Clay was suspended for one day for addressing an assistant fire chief in a disrespectful manner by written letter. In August 1993, Clay was suspended for three days for violating the department's sick leave policy. When asked to sign the disciplinary report regarding the suspension, she refused, asked for a union representative and when this was denied, she stated, in the presence of the station chief, "This is just another way for you guys to fuck me over." This incident led to a ten-day suspension.

In January 1994, Lieutenant Santana, Clay's supervisor at the time, called her into his office for conversations behind closed doors. Clay contends during these conversations Santana seated himself in a chair next to her, touched her arm, and grabbed her knee while saying "Trust me. Trust me. I just want to help you get through this." Clay was scared and intimidated by his conduct. Two days later, at the end of the shift, Santana told Clay to come into his office to sign her daily evaluation form. She refused. Santana directed her into his office a second time and she refused. As a result, she was discharged.

Clay appealed to the Cedar Rapids Civil Service Commission. The commission affirmed the suspensions and discharge. Clay appealed to the district court. Following trial, the district court affirmed the commission's rulings on the suspensions, but reversed Clay's discharge. The City of Cedar Rapids and the Cedar Rapids Civil Service Commission appeal.

## II. Standard of Review.

■ Appeal from a civil service commission decision is tried de novo in the district court. Iowa Code § 400.27 (1993). The district court "try[s] the case anew and give[s] no weight or presumption of regularity to the findings of the Commission." *Sieg v. Civil Service Comm'n*, 342 N.W.2d 824, 828 (Iowa 1983). On appeal from the district court, this court also reviews de novo. *Mahaffey v. Civil Service Comm'n*, 350 N.W.2d 184, 185 (Iowa 1984). Throughout the trial and appellate court proceedings, the commission has the burden of showing the discharge was statutorily permissible. *Johnson v. Civil Service Comm'n*, 352 N.W.2d 252, 257 (Iowa 1984).

## III. Disobeying a Direct Order of Supervisor as Misconduct.

■ The first question is whether Clay's disobeying the direct order of Santana was misconduct. Civil service employees can be "peremptorily suspended, demote[d] or discharge[d]" for "... misconduct." Iowa Code § 400.19 (1997). The term "misconduct" has no fixed meaning, but is broad enough to include relatively minor or innocuous behavior as well as flagrant and injurious breaches of decorum. *Sieg*, 342 N.W.2d at 829.

■ Clay did not obey Santana's directive. This fact is not in dispute. However, not every refusal to obey a supervisor's order will amount to misconduct. Although this case is decided under the civil service

statutes rather than employment law principles,[1] some employment law principles are helpful in judging whether Clay's refusal to follow her supervisor's directive was misconduct. For instance, under Iowa law, it is not unreasonable for an employee to refuse to commit an unlawful act in the workplace, *Borschel v. City of Perry*, 512 N.W.2d 565, 568 (Iowa 1994); *Wilcox v. Hy–Vee Food Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa App. 1990); or to refuse an employer's order to take a polygraph examination. *Id.* Under Iowa and federal law it is a statutorily protected right to complain about sexual harassment in the workplace. *See City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 535 (1996). It is reasonable for an employee to refuse sexual overtures of her supervisor. Such a refusal is not misconduct.

The record shows Clay was subject to unwelcome sexual touching by Santana during their private meeting in his office. This evidence is uncontroverted. When Santana ordered Clay to come into his office two days later to sign a daily evaluation form, Clay refused. Clay offered to review the form in the kitchen, but Santana again directed her to his office. Again, she refused. Other fire fighters remember Clay stating she would not go into Santana's office because of his unwelcome touching. Clay's allegation of Santana's conduct is more credible in light of the fact that he was disciplined for his inappropriate sexual conduct toward other female fire fighters.[2] Under these circumstances, Clay's refusal of Santana's order was justified and cannot be classified as misconduct.

■ The defendants argue Clay's refusal must be viewed in light of her employment history of misconduct.[3] Clay's employment history is tainted by numerous incidents of misconduct. Some were relatively minor, and others were serious. Clay does not claim to be the pride of the unit. This history, however, does not make it less reasonable for Clay to refuse to enter the office of a supervisor who inappropriately touched her. Even bad employees have the right to object to inappropriate sexual behavior.

## IV. Misconduct Effecting Public Service.

■ Even if Clay's allegation against Santana were not true, making her failure to follow his directive misconduct, the question is whether her misconduct warranted termination under the civil service statute. Under the statute, misconduct warranting termination must be misconduct which is "detrimental to the public interest." *Borlin v. Civil Service Comm'n*, 338 N.W.2d 146, 148 (Iowa 1983); *Millsap v. Cedar Rapids Civil Service Comm'n*, 249 N.W.2d 679, 687 (Iowa 1977).

Clay's refusal was not at the scene of a fire. Her refusal was not in public, so as to

1. We do not decide this case under employment discrimination law. Clay argues Iowa Code section 400.17 which provides "A person shall not be ... discharged ... from a civil service position ... because of political or religious opinions or affiliations, race, national origin, sex, or age" incorporates all of employment discrimination doctrine into the civil service law.

   · We disagree. Under the Iowa Civil Rights Act there are statutory prerequisites which must be followed before filing an employment discrimination claim in district court based on Iowa law. If an employee files with the Commission and the Commission issues a no probable cause finding the employee's only redress in district court is to have the no probable cause finding reversed by a district court. The incorporation of the anti-discrimination provision within the civil service statutes does not give civil service employees a back door entrance to having discrimination claims tried in a state district court after the Iowa Civil Rights Commission has made a finding of no probable cause on the complaint.

2. The defendants argue the district court erroneously · considered the disciplinary measures against Santana in lending to the credibility of Clay's allegation of unwelcome touching. However, allegations by other women that a supervisor has harassed them has been allowed to demonstrate the intent and motive of the harasser and the knowledge of harassment by the employer. *See, e.g., Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244, 1251 (M.D.Fla. 1996).

3. Prior violations of rules may be considered in determining whether the cumulative effect of an officer's misconduct is sufficient to warrant discharge. *See Higgins v. Iowa Dep't of Job Service*, 350 N.W.2d 187 (Iowa 1984); *McCormack v. Civil Serv. Comm'n*, 315 N.W.2d 855, 859 (Iowa App.1981).

project a public image of the fire department. *See Eilers v. Civil Service Comm'n of City of Burlington,* 544 N.W.2d 463, 466 (Iowa App. 1995). Her refusal was not detrimental to preserving public trust and confidence. *See City of Clinton v. Loeffelholz,* 448 N.W.2d 308, 312 (Iowa 1989). The incident did not bring into question Clay's ability to perform her job as a firefighter. *See Chelf v. Civil Service Comm'n,* 515 N.W.2d 353, 355 (Iowa App.1994); *Borlin v. Civil Service Comm'n,* 338 N.W.2d 146 (Iowa 1983) (failure to discontinue secondary employment after police chief's order to do so was detrimental to the public service, warranting dismissal of disobedient police officer).

The defendants argue it would be detrimental to the public if Clay did not follow orders at the scene of a fire or in handling equipment. The question is not if Clay's behavior in other instances would be detrimental to the public. The question is whether failing to go to Santana's office when he directed her to was detrimental to the public. It was not. Because Clay's not following Santana's order was not detrimental to the public, discharge of Clay was not warranted under the civil service statutes.

**AFFIRMED.**

MAHAN, J., concurs.

HUITINK, P.J., concurs specially.

HUITINK, Presiding Judge (specially concurring).

I concur in the result only.