A. W. KRUEGER, Appellant, v. R. D. RAMSEY, Appellee.

MUNICIPAL CORPORATIONS: Vacation of Streets. Principle rec-
1　ognized that cities and towns have plenary powers to vacate
streets, and thereafter convey the same, so long as the prop-
erty owner is afforded reasonable opportunity to pass to and
from his property. (Sec. 751, Code Supp., 1913; Sec. 883, Code,
1897.)

MUNICIPAL CORPORATIONS: Proceedings of Council—Council-
2　man Interested in Result. An ordinance vacating a street,
passed by the vote of a councilman who was to be personally
benefited by receiving the fruits of the vacation, is void. (Sec.
668, Par. 14, Code Supp., 1913.)

CERTIORARI: Existence of Other Remedy. A private party, ag-
3　grieved by the vacation of a public highway, is not necessarily
driven to a writ of certiorari to test the validity of the vaca-
tion. *He may proceed in equity.*

INJUNCTION: Void Vacation of Street. Injunction will lie to
4　obtain relief from a void vacation of a public highway.

*Appeal from Shelby District Court.*—J. B. ROCKAFELLOW,
Judge.

DECEMBER 19, 1919.

REHEARING DENIED MARCH 17, 1920.

ACTION to enjoin the defendant from obstructing a pub-
lic highway, and to require him to remove from the public
highway obstructions wrongfully placed by him therein.
Decree dismissing plaintiff's petition. Plaintiff appeals.—
*Reversed.*

*G. W. Cullison,* for appellant.

*E. S. White,* for appellee.

GAYNOR, J.—For the past 30 years, plaintiff and his
grantors have been the owners of the north half of the

southwest quarter of Section 17, Township 79, Range 40

West of the 5th P. M., in Shelby County,

**1. MUNICIPAL CORPORATIONS: vacation of streets.**          Iowa, and, in connection therewith, used the highways in controversy. Plaintiff's buildings are near the southeast corner of his land. Prior to the happening of the matters herein com plained of, there was a road running south from the southeast corner of plaintiff's premises to a public highway running east and west along the south side of said section. The road on the south side of Section 17 was legally established and well traveled. There was another road, running east from the southeast corner of plaintiff's premises, about 80 rods long, to the town of Portsmouth. The road running south from the corner of plaintiff's premises aforesaid was 66 feet wide. The road running east to Portsmouth was 33 feet wide. These were the only roads furnishing ingress and egress to plaintiff's land. Both these roads were within the corporate limits of the town of Portsmouth, and it is an incorporated town.

On and prior to 1896, the Milwaukee Land Company was the owner of the southwest quarter of the southeast quarter of Section 17, and, while it was such owner, it granted to the town of Portsmouth two roads, one off the north side of its 40, 33 feet wide, and one off the west side of its 40, 66 feet wide. The land for these roads was subsequently conveyed by the Milwaukee Land Company to the city by deed, and these are the roads in controversy. After these deeds were made, these roads were thrown open to public travel, and used by the public until the happening of the matters hereinafter complained of. Subsequently, the Milwaukee Land Company conveyed to the defendant, Ramsey, its said 40, except so much as was covered by the highways in controversy, and Ramsey has used and occupied the premises so purchased from the Milwaukee Company, and is still occupying it. In the year 1918, the defendant, Ram-

sey, took possession of the public highways in controversy, and put up barriers to prevent the public and the plaintiff from traveling over the same.

This action is brought to compel him to remove the obstructions so placed in the highways, and to enjoin him from further obstructing the same.

It will be noted that the fee to the land covered by these highways was in the town of Portsmouth; that, when Ramsey bought this 40, he took it subject to the rights of the city under its deed, and the right of the public to travel over these highways. If nothing further appeared, Ramsey would have no right to close the roads or to interfere with travel upon the same. It appears, however, that Portsmouth is an incorporated town, and that, prior to this action of Ramsey's, complained of, attempted by ordinance to vacate the 66-foot road running south from plaintiff's corner, and to deed the land covered by it to Ramsey. It is upon this action on the part of the town that Ramsey asserts the right to close this road. It will be noted that both the roads were taken off the Ramsey 40, to wit, the southwest quarter of the southeast quarter of Section 17. We need not consider any claim made by plaintiff to the 33-foot road running east from his corner, for the reason that, on the hearing, the court found that the north and south road from defendant's corner had been vacated by the town, and the land covered by it deeded to Ramsey, and that Ramsey had a right to obstruct it, and dismissed plaintiff's petition, in so far as it sought any relief against Ramsey with respect to that road, but found for the plaintiff as to the 33-foot road running east, thus leaving this 33-foot road open to the plaintiff to travel at his will in going to the town of Portsmouth. While some question is made as to whether or not it had any jurisdiction over the territory covered by the roads, we think a fair reading of the record shows, beyond any reasonable dispute, that they are

within the jurisdiction of the town, and that the town had authority to act in respect to the same.

Plaintiff alone appeals.

The question for our determination involves only the north and south road on the west side of the southwest quarter of the southeast quarter of Section 17. The determination of the case turns upon the action of the counsel in vacating this road, and deeding the territory covered by the same to the defendant, Ramsey.

That a city or town has a right, under the statute, to vacate public streets, alleys, and highways within its jurisdiction, is not disputed. That right is conferred upon the city or town by the statute. Section 751 of the Code of 1897 provides:

"Cities and towns shall have power to establish, lay off, open, widen, straighten, narrow, vacate, extend, improve and repair streets, highways, avenues, alleys, public grounds," etc.

It has been the uniform holding of this court that the general assembly has full power over streets, and may vacate or discontinue the public easement in them, and may invest municipal corporations with this authority. It has further been held that, in all cases where the title was vested in the city, the city or town, upon vacation, may deed the property so vacated, although, upon deeding, the public right to use them is destroyed. Upon this point, see *McLachlan v. Town of Gray*, 105 Iowa 259; *Spitzer v. Runyan*, 113 Iowa 619; *City of Marshalltown v. Forney*, 61, Iowa 578; *Harrington v. Iowa Cent. R. Co.*, 126 Iowa 328; *City of Lake City v. Fulkerson*, 122 Iowa 569; *Walker v. City of Des Moines*, 161 Iowa 215; and *Hubbell v. City of Des Moines*, 173 Iowa 55, and 183 Iowa 715.

When it is remembered that cities and towns are charged with the duty to maintain and keep in repair all public highways within their jurisdiction, devoted to public use,

we appreciate the wisdom of the statute which allows them to avoid their responsibility by a vacation of a street, and withdrawing it from the public use. There are, however, some limitations upon this right, that are well recognized: that is, where public highways, streets, and alleys are laid out for public use, and private rights have been acquired in the land abutting on them, and the exercise of the right of vacation may operate to the injury of the abutting property owner, he may be entitled to insist that the right existing of ingress and egress may not be totally destroyed, and, if destroyed, that he have a right to recover damages on account thereof. But we think it will not be seriously questioned that even a property owner has not a right of ingress or egress from all points of his property to the prejudice of the public interest, and, therefore, is not in a position to complain of the action of the city in vacating a street, if, in the exercise of its right, the city has not destroyed his private right to reasonable ingress and egress. The destruction of a right which is common to the general public does not invest an abutting property owner with any ground of complaint. As long as his right to ingress and egress is maintained,—that is, his private right,—he has no ground of complaint. The right of the individual must give way to the larger right of the public, though it has been recognized, in the last case cited, that the property owner's right is not entirely subordinated to the public right or the public interest. The right which the property owner acquires is the right of ingress and egress to and from his property. All other rights enjoyed by him are held by him in common with the public. This field has been covered so frequently and so fully in the cases hereinbefore cited that we need not enter into any elaboration upon this, but turn our attention to those matters which are urged here against the right of the defendant to do the thing complained of.

The first contention of plaintiff is that the street was never legally vacated. This contention rests on the fact that Ramsey, at the time the city council acted, was a member of the council, and voted for the vaca-

**2. MUNICIPAL CORPORATIONS: proceedings of council: councilman interested in result.** tion. It is contended that this had the effect of destroying the legal efficacy of the act of vacation.

It will be noted that, upon the vacation, the property reverted, not to Ramsey, but to the city. In fact, the legal title did not revert to the city, because it was already vested with the legal title. The effect of the vacation was to unburden the legal title of the easement in the public. If nothing further appeared, Ramsey did not have a personal and present interest in the act of vacation, or in the fruits of the act. But the record discloses that, prior to any action taken by the city council to vacate this road, Ramsey had entered into an oral understanding with the town that, if they would vacate this north and south road and turn it back to him, he would turn over another road to the county; that Ramsey agreed to this; and that thereafter the action was taken to vacate the road.

One Tracy testified that he was clerk of the town of Portsmouth, and had possession of the records; that he was present at one meeting when the question of crossing Ramsey's land was discussed and talked over. He says, in substance:

"There was a petition handed me from the farmers west of Portsmouth, a petition to change the road. This petition was read to the council. Mr. Ramsey was there, and the subject was brought up for discussion. They talked it back and forth. Mr. Ramsey wanted to know what they would do, and they made an arrangement with him that they would vacate this piece of land [the north and south road in controversy] and give it back to him, if he would give them a road through the way these farmers

wanted.  Ramsey was not to charge them anything for the land for this new road, if they would vacate the road in controversy, and deed it to him.  He didn't want the old road through there, if he had to give another road running around the other side.  The new road was then agreed upon, on condition that the old road be vacated."

Section 683 of the Code was then in force, and provided that, in towns, by-laws, ordinances, and the resolutions and orders shall require for their passage or adoption a concurrence of four councilmen, or of three councilmen and the mayor.  At the meeting at which the ordinance passed, vacating, there were present the mayor and four councilmen.  Among these councilmen was defendant, Ramsey.  He voted for it.  The record shows that there were five members of the council at the time: Ramsey, Bendon, Henley, Doyle, and Rosenthal.  Rosenthal was not at the meeting.  The ordinance provided for the vacation of this 66-foot road in controversy, and the ordinance vacating the road was passed by the concurring vote of Ramsey, with three others of the council.  Without Ramsey's vote, the ordinance would not have passed, and the road would not have been vacated.  It would stand as originally created by the act of the Milwaukee Land Company—a public road deeded to the city for a public highway.  Ramsey had a special interest in having this vacated.  It was all on his land.  The ordinance was passed by Ramsey's vote, with the understanding that the land covered by the vacated road would subsequently become his, through the action of the council.  He came within the inhibition of that rule found in Section 668 of the Code of 1897, Subdivision 14, which provides that:

"No member of any council shall, during the time for which he has been elected, * * * be interested, directly or indirectly, in any contract or job for work, or the

profits thereof, or services to be performed for the corpora-tion."

In *Bay v. Davidson,* 133 Iowa 688, 690, this court held that the purpose of this statute was to prevent councilmen, directly or indirectly, from making profit out of their relationship with the city. Such contracts are void at common law, and this court has repeatedly refused to enforce them. Defendant is relying upon this ordinance to justify his act in closing up the highway. If this ordinance is void, he has no justification, and we think he had none under the authority of *Bay v. Davidson,* supra, and *James v. City of Hamburg,* 174 Iowa 301. This ordinance could not have passed without the vote of Ramsey. Ramsey was interested in having it pass. Its passage gave him this strip of land, covered by this road, or, at least, it was his understanding and agreement that, upon the passage of the ordinance vacating this road, the town would deed this land to him; and it did. We must hold the effort at vacation, therefore, void.

It is contended, however, that plaintiff cannot raise this question; that the only method of raising it is by certiorari. Certiorari would not bring the relief which plaintiff seeks in this suit. All he asks is **3. CERTIORARI: existence of other remedy.** that this defendant be enjoined from obstructing a public highway, properly and legally created, and industriously used by the public as a highway for many years. Equity takes cognizance of the rights here involved, and will give the relief prayed for. The ordinance only becomes defensive, and, being void, serves as no defense.

The ordinance being void, under which the defendant seeks to justify his act in obstructing this highway, we think the court erred in dismissing plaintiff's petition. It

4. INJUNCTION:
void vacation
of street.

will be borne in mind that this proceeding is against a private citizen, who is charged with violating the statute prohibiting the obstruction of a public highway.  Anyone whose private rights are invaded by the act of obstruction may maintain an action to enjoin the continuance of the wrong.  That plaintiff had an interest is made manifest by the fact that this road was one of the avenues open to him for travel to and from his premises.  In one sense, his land does not abut upon the public highway, but the public highway leads to his land from the main traveled road to the south, and the record shows it is necessary for his use in traveling to the county seat of the county, and to other market places within his vicinity.  His private right has been invaded.  He is, therefore, a proper party to maintain the action.

Upon the whole record, we think the court erred in dismissing plaintiff's petition; that, under the record made, the plaintiff was entitled to the relief that was denied him.  The case is, therefore,—*Reversed*.

LADD, C. J., WEAVER and STEVENS, JJ., concur.