LANPHER, SKINNER, & CO., a Corporation, Respondent, v. JOHN L. SCHULDHEISZ, Appellant.

(176 N. W. 1.)

**Sales— orders taken with the supposition that purchaser would keep his credit good.**

In an action to recover on a book account where the defendant counter-claimed, asking damages for the failure of the plaintiff to fill certain orders for goods, which orders had been previously given by the defendant to a sales-man representing the plaintiff, and receipt of which had been acknowledged by the plaintiff, it appears that according to a prior course of dealing between the parties the invoices for the goods represented by the order were to be dated November 1, 1917, defendant to have sixty days' credit thereafter. The defendant had allowed his previous accounts to become delinquent from six months to a year, and had refused to make settlement with plaintiff until plaintiff would ship the goods embraced in the order. It is *held:*

1. The orders were given and taken upon the implied understanding that the defendant would keep his credit good with the plaintiff.

**Sales — seller not compelled to fill orders when buyer does not keep his credit good.**

2. Under the facts disclosed by the evidence, the defendant failed to fulfil the implied condition which would entitle him to further credit, and the plaintiff was not guilty of a breach of contract in declining to ship in ful-filment of the orders previously acknowledged.

Opinion filed January 15, 1920.

Appeal from an order and judgment in District Court, LaMoure County, *Coffey,* J.

Affirmed.

*Wolfe & Schneller,* and *Hutchinson & Lynch,* for appellant.

The loss of profits sustained by appellant on account of nondelivery of the goods should have been submitted to the jury. 8 R. C. L. "Damages" §§ 62 et seq.; Taylor Mfg. Co. Hatcher & Co. 3 L.R.A. 587 and note; Cavanaugh Mfg. Co. v. Rosen, 92 N. W. 788; Pelsofsky v. Kaufman, 1 A.L.R. 433.

Nothing short of a breach of contract or actual insolvency would excuse a party from fulfilling the contract on its part. Frolich v. In-

44 N. D.—39.

dependent Glass Co. 107 N. W. 889; Cavanaugh Mfg. Co. v. Rosen, 92 N. W. 788.

Where a contract is severable, the failure of the purchaser to pay one instalment does not release the seller from the contract. Under the same rule, the failure of the defendant Schuldheisz to pay for goods already delivered, did not release the plaintiff from carrying out its contract of sale. Iowa Brick Mfg. Co. v. Herrick, 102 N. W. 787; Tucker v. Billing, 5 Pac. 554; Osgood v. Bauder, 39 N. W. 887; Myer v. Wheeler, 21 N. W. 692.

*R. H. Sherman* and *Winterer, Combs, & Ritchie,* for the respondent.

"If the failure to fully perform is deliberate and intentional, and not the result of inadvertence or inability to perform, the other party under these circumstances may treat the contract as being at an end." 9 Cyc. 649; Stephenson v. Cady, 117 Mass. 6; Blackburn v. Reilly, 47 N. J. L. 290, 1 Atl. 27, 54 Am. Rep. 159; Catlin v. Tobias, 26 N. Y. 217, 84 Am. Dec. 183; Rugg v. Moore, 110 Pa. 236, 1 Atl. 320.

"If nonpayment of one instalment of goods be accompanied by such circumstances as to give the seller reasonable grounds for thinking that the buyer will not be able to pay for the rest, he may take advantage of this one omission to repudiate the contract." Stephenson v. Cady, supra; Stokes v. Barr, 18 Fla. 656; Geo. H. Hess Co. v. Dawson, 149 Ill. 138, 36 N. E. 557; W. H. Purcell Co. v. Sage, 200 Ill. 342, 65 N. E. 723; Rybold v. Voorhees, 30 Pa. 116; Hull Coal etc. Co. v. Empire Coal etc. Co. 113 Fed. 256; Burt v. Sand Co. 141 Ill. App. 603; Buggy Co. v. Forging Co. 168 Ind. 593, 81 N. E. 574, 11 Ann. Cas. 1045; Strothers v. Lumber Co. 200 Mo. 647; Coal Co. v. Coal Co. 205 Ill. App. 264; Coryell v. Furnace Co. 96 Atl. 65; Agency v. Penoyar, 167 Cal. 274, 139 Pac. 671; Mfg. Co. v. Furniture Co. 137 Ill. App. 622; Stores Co. v. Commercial Co. 178 Ill. App. 7; Brunswig v. Grain etc. Co. 100 Kan. 261, 164 Pac. 154.

"It is generally true that when a party who is guilty of the first breach of contract can neither found a right of action upon such contract, nor make it the basis of a defense to an otherwise just claim." State Co. v. Peck, 17 Kan. 271; Lumber Co. v. Lumber Co. supra.

"To entitle the defendant to recover compensatory damages upon his counterclaim, the actual detriment occasioned must be shown by com-

petent evidence and with reasonable certainty. In other words the evidence must afford date, facts, and circumstances, reasonably certain, from which the jury may find the actual loss." 8 R. C. L. 652, ¶ 195 and cases cited; Russell v. Olson, 22 N. D. 410, 37 L.R.A.(N.S.) 1217, 133 N. W. 1030, Ann. Cas. 1914B, 1069.

BIRDZELL, J.: This is an action to recover a balance which the defendant owed on an account. The trial court directed a verdict for the plaintiff for the amount claimed upon which judgment was entered in the sum of $951.01. There is no issue concerning the claim upon which the judgment is based. The appeal involves only the counterclaim of the defendant which is based upon the failure of the plaintiff to fill certain orders for goods. In stating his counterclaim, the defendant alleged that he was engaged in business as a retail merchant, operating stores at Kulm and Fredonia; that for several years he had purchased goods from the plaintiff for sale in his retail stores; that it was customary for the defendant to give orders to traveling salesmen representing the plaintiff, and that in the months of February, March, and April, at plaintiff's solicitation, the defendant bought for future delivery, commencing in August, 1917, merchandise to the amount of $2,400 wholesale price; that the invoices were to be dated as of November 1, 1917, and defendant was to have sixty days thereafter in which to pay. Defendant then alleged the plaintiff's failure to delivery any portion of the goods ordered and his damages incident to such failure.

It is claimed that the court erred in directing a verdict for the plaintiff and in refusing to submit the issues arising upon the counterclaim to the jury, for the reason that under the evidence it does not appear that the plaintiff was justified in the refusal to ship the goods.

In order to determine whether or not the plaintiff, by its refusal to ship the goods ordered, violated the terms of a contract with the defendant, it is necessary to examine the record facts for the purpose of determining the contractual relations existing between the parties. It appears that it was the custom of the plaintiff to solicit business through traveling salesman and that one F. C. Fales, in the capacity of salesman, visited the defendant's place of business at Kulm

at various times during the Winter and Spring of 1917, obtaining orders for goods which were to be delivered in time for the Fall trade. As these orders were received at the wholesale house of the plaintiff in St. Paul, receipt would be acknowledged by postal card, reading as follows: "We are in receipt of your esteemed order, and will give it our careful attention." The orders involved in the counterclaim are dated February 10th, March 31st, and April 12th, 1917. As orders were received and after their receipt had been acknowledged as above, they were turned over to the credit department which either refused or authorized shipment in the exercise of its judgment as to the satisfactory character of the account. The parties had been dealing with each other through a period of years and the defendant was cognizant of the methods according to which the plaintiff did business. The correspondence passing between the parties during the Winter, Spring and Summer of 1917, covering the period these orders were with the plaintiff unfilled, shows a most persistent effort on the part of the plaintiff to induce the defendant to pay up his back account for the year 1916. It seems that the Spring account, the invoices of which allowed 60 days' credit, matured on July 1, 1916, and was still unpaid in January, 1917. During the first six months of 1917 considerable correspondence passed between the parties relative to that account. It was not paid until the 19th of June, approximately one year after it was due. At that time the Fall account of 1916, upon which nothing had been paid, was approximately six months overdue. In the course of the correspondence relative to the Spring account of 1916, it appears that the plaintiff seriously considered cutting off delivery of the then current Spring order. Under date of March 21st, 1917, the plaintiff, writing in regard to an April 1st extension of the Spring account of the year previous, stated: "Before that time we hope to have settlement of the Spring account of last year, when we shall be able to send you the merchandise comprised in the Spring order." Taking the correspondence as a whole, which is perhaps the best evidence of the course of dealing between these parties, we are satisfied that it establishes beyond peradventure a course of dealing whereby the right of the defendant to demand further goods upon credit was always contingent upon so handling his account as to keep his credit with the

plaintiff in a satisfactory condition. We are also of the opinion that any acceptance of the orders for Fall goods in the year 1917 was upon the implied understanding that their shipment should be contingent upon the defendant's keeping his credit good with the plaintiff.

Instead of endeavoring to keep his credit good, it appears that the defendant sought to take advantage of his indebtedness to the plaintiff by making its payment contingent upon the receipt of future goods. The record discloses that the plaintiff required no inducement of this character to prompt it to fill its orders. On the contrary, it appears that the company desired to continue its business relations with the defendant, provided only that he would handle his credit account in a more satisfactory manner. The plaintiff company in fact never refused to fill the orders in question but it stated plainly to the defendant that when his account was fully paid up it would go into the matter of further business with him and that the continuance of his account would depend entirely upon what he proposed to do in regard to meeting plaintiff's bills in the future.

To adopt the defendant's version of the contractual relations between the parties, we would be required to hold that though the defendant, at the time the orders were received and acknowledged by the plaintiff, was already delinquent in considerable amount, the plaintiff was bound to extend a further credit of some $2,400, even though the defendant should repudiate entirely his existing indebtedness and give it no further attention. We think the more reasonable construction of the contractual relations of the parties resulting from the giving and taking of the orders in question, in the light of the course of dealing between them, is that the obligation of the seller, the plaintiff, to deliver future goods upon credit was subject always to the implied condition that the defendant should give reasonable evidence of ability and willingness to conform to the terms of that credit. The conduct of the defendant in the instant case is fully indicative of inability and unwillingness to conform to the terms of the credit arrangement as though he had become actually insolvent. In short, he had demonstrated his prospective inability to conform to the terms of the credit which he now demands extended to him as a matter of contract right. See Williston, Sales, § 576.

Being of the opinion that the record fails to show an unconditional contract binding the plaintiff to extend credit to the defendant for the goods embraced in the order, it follows that there is no basis for the recovery of the damages alleged in the counterclaim. The judgment and order appealed from are affirmed.

CHRISTIANSON, Ch. J., and ROBINSON and BRONSON, JJ., concur.

GRACE, J., dissents.