R. L. GARDNER and Ruth Gardner, Plaintiffs-Appellants,

v.

The NASHVILLE HOUSING AUTHORITY OF the METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al., Defendants-Appellees.

Charles H. ADAIR and June P. Adair, Plaintiffs-Appellants,

v.

The NASHVILLE HOUSING AUTHORITY OF the METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al., Defendants-Appellees.

Nos. 74–1687, 74–1688.

United States Court of Appeals, Sixth Circuit.

April 10, 1975.

J. Granville Clark, Russelville, Ky., for plaintiffs-appellants.

Joseph L. Lackey, Jr., Wilson Sims, John H. Bailey, III, Charles H. Anderson, U. S. Atty., Nashville, Tenn., Martha A. Johnson, Asst. U. S. Atty., for defendants-appellees.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

PER CURIAM.

This is the second appeal involved in this litigation (See Gardner v. Nashville Housing Authority, 468 F.2d 480 (6th Cir. 1972)). At the first hearing United States District Judge Morton had dis-

missed the complaints in these two cases because plaintiffs had failed to join the United States Department of Housing and Urban Development (HUD). This court agreed that HUD was a necessary party for federal question jurisdiction under 28 U.S.C. § 1331 (1970), but vacated judgment so that plaintiffs could amend to join the essential federal department as a party.

After the amendment and the joining of HUD, the case was assigned for further hearing to the Honorable Daniel H. Thomas, Senior Judge for the Southern District of Alabama, sitting by designation.

At the second hearing the parties stipulated that the entire record, including all of the evidence at the previous hearing, should be considered by Judge Thomas, and additional evidence was introduced by HUD and by plaintiffs. On March 4, 1974, Judge Thomas entered a careful and thorough opinion, including findings of fact and conclusions of law, which led him to dismiss plaintiffs' complaints on the merits. 388 F.Supp. 481 (M.D.Tenn.1974).

This court has now reviewed the briefs, the records of these two proceedings, and Judge Thomas' opinion. We can find no basis for holding any of his findings of fact to be clearly erroneous. In this regard we refer specifically, although not exclusively, to his findings 1 through 7. Nor do we perceive any error in the District Judge's legal conclusions.

■ While we recognize the sincerity of the plaintiffs and we understand their intense desire to be allowed to keep the two residential properties which they own, it is clear to us that the statutory plan involved in Congress' adoption of Section 112 of the Housing Act of 1949, as amended, (42 U.S.C. § 1463 (1970)), was intended to serve areawide purposes of removing the effects of slums and housing blight. Inevitably such a scheme had to contemplate the acquisition of some standard housing which, as of the acquisition date, was still serving its owners' interests very well. The con-

stitutionality of urban redevelopment planning by combined federal and local government action (including participation therein by private enterprise) has long ago been upheld by the Supreme Court in Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), and by this court in Woodland Market Realty Co. v. City of Cleveland, 426 F.2d 955 (6th Cir. 1970), and Gibson & Perin Co. v. City of Cincinnati, 480 F.2d 936 (6th Cir.), cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).

We recognize that these last two cases denied relief to property owners outside of redevelopment areas who were complaining about the impact of the redevelopment on their properties, whereas our instant plaintiffs' property is directly subject to acquisition under the redevelopment plan. The holdings of the *Berman, Woodland* and *Gibson & Perin* cases appear to us to apply with even greater force to the constitutional claims of the appellants.

■ Further, like the District Judge, we have found in this record no abuse of procedural due process and no arbitrary and capricious actions on the part of either the federal or the local agencies. It seems to us, as it obviously did to Judge Thomas, that Nashville in general and these plaintiffs in particular have known the purpose of this plan for at least ten years.

We have, however, given special attention to plaintiffs' claims 1) that the redevelopment plan involved in this particular proceeding was the product of an illegal conspiracy between Vanderbilt University and the Nashville Housing Authority, and 2) that two of the members of the Nashville Housing Authority should have been barred from participating in decision making by conflicts of interest.

■ As to the conspiracy charge, the District Judge did not find, the plaintiffs have not pointed out, and we have not discovered in the record any evidence at all of illegal purpose or conspiratorial combination. Many of Nashville's leaders in both civic and educational affairs

were involved in the planning and decision making concerning this project. Doubtless they knew each other and doubtless, too, they exhibited friendly concern for the interests of Vanderbilt University. For that matter, it is obvious that Congress did likewise when it adopted Section 112 of the Housing Act of 1949, as amended, (42 U.S.C. § 1463 (1970)).

In short, we find nothing more in this record then that many public officials have cooperated toward completion of a statutorily authorized project deemed by the local government to be of great civic benefit.

 The assertion of conflict of interest is similarly unsupported in this record. Conflict of interest is a phrase which may be given many meanings. Generally, however, when it is used to suggest disqualification of a public official for performing his sworn duty, it refers to a clash between the public interest and the private pecuniary interest of the individual concerned. Here no such clash is presented. On the contrary, we are asked to deduce that because the Chancellor of Vanderbilt was a member of the Board of Directors of the Federal Reserve Bank at Atlanta, he thereby controlled the public decision making of two members of the Nashville Housing Authority who in their private lives were officers of two separate Nashville banks. There is not a line of testimony that suggests that any such influence or control existed or was ever attempted or even hinted at. We arrive at the same conclusion concerning the claim that these same two Nashville Housing Authority Board members were officers of banks and thus under the control of two other fellow bank officers who were also members of the Vanderbilt Board of Trust.

We have considered appellants' argument that these relationships violated T.C.A. § 13–910 (1973). Inspection of that statute discloses no prohibition which deals remotely with the facts of this case. Appellants' reliance upon Wilson v. Iowa City, 165 N.W.2d 813 (Iowa

1969), has led us to read that case with care. In the *Iowa City* case six city councilmen who voted for resolutions authorizing the urban renewal condemnation plan themselves owned property or interests in property which would be subject to acquisition. Another councilman was a full time paid executive of the University of Iowa which was very much in favor of the redevelopment plan. The Iowa Supreme Court held that all seven council members had conflicts of interest which voided the council's actions.

As we have noted, no such facts are present in the instant case and, of course, we are not bound by the dicta in the opinion.

We do not feel that we need to discuss the appellate issues of this case further in view of Judge Thomas' comprehensive opinion which we have reviewed with care and hereby adopt.

The judgment of the District Court is affirmed.